JUSTICE GRAY,
dissenting.
I respectfully dissent from the Court’s opinion. The Court addresses only obliquely and, in my view, incorrectly the threshold issue raised by PPT; namely, whether “employment” existed as defined by statute. Because I conclude that it did not and that this issue is dispositive, I would reverse the District Court’s affirmance of the Board’s decision.
Unemployment insurance law is governed by statute in Montana and liability for payment of unemployment insurance taxes is determined pursuant to statutory standards and definitions. The threshold question in every unemployment insurance tax proceeding is whether employment exists, and “employment” is statutorily defined, in pertinent part, as “service by an individual... performed for wages ....” Section 39-51-203(1), MCA. Moreover, such “[s]ervice performed by an individual for wages is considered to be employment... until it is shown to the satisfaction of the department that the individual is an independent contractor.” Section 39-51-203(4), MCA. Under these statutes, therefore, and subject to enumerated exclusions from the term “employment” set forth in § 39-51-204, MCA, once it is determined that the individual is performing service for wages — that is, once “employment” is established — the burden is on the party against whom the Department is proceeding to establish that the individual at issue is an independent contractor rather than an employee. In other words, the burden of establishing independent contractor status does not arise until it has been established that the individual at issue was performing services for wages for the person or entity against which unemployment insurance tax liability is sought. Sections 39-51-203(1) and 39-51-203(4), MCA.
In the present case, the hearing officer properly stated the issue as whether Nevin’s services were employment pursuant to § 39-51-203, MCA. He then made findings relating to the contract and the actual working arrangements between PPT and Nevin, specifically finding that Nevin was not a partner, owner or co-owner of PPT. On the basis of the latter finding, the hearing officer concluded that Nevin must be either an employee or an independent contractor. He further concluded that services performed for wages constitutes employment and, therefore, that the burden was on PPT to establish that the service performed was not employment. After applying independent contractor-related principles, the hearing officer ulti *106 mately concluded that PPT had not established that Nevin was an independent contractor and, indeed, that an employer-employee relationship existed between them. The Board adopted the hearing officer’s findings and decision and, after remand, expressly determined that no errors of law had occurred. The District Court affirmed the Board’s decision, focusing — as had the hearing officer and the Board — on the “independent contractor” issue. In my opinion, the District Court erred in doing so.
As discussed above, a determination that “employment” exists, as defined by § 39-51-203(1), MCA, is a necessary prerequisite to a determination of whether an individual is an independent contractor. See § 39-51-203(4), MCA. In this case, the determination of “employment” would require findings that Nevin performed services for PPT for wages, and such findings would support a conclusion — for purposes of §§ 39-51-203(1) and 39-51-203(4), MCA — that employment existed. Such findings and conclusion would provide the necessary foundation upon which a subsequent determination could be made as to employee or independent contractor status.
Here, however, the foundational findings and conclusion that employment existed were not made. Findings were made that Nevin was to provide — and did provide — treatment to patients as a licensed physical therapist. Additional findings were made that PPT was to provide — and did provide — a wide variety of services to Nevin for which Nevin was to pay PPT 50% of the fees she earned from treating patients. Further, a finding was made that, after Nevin deposited her fees in PPT’s business account, PPT paid Nevin 50% of Nevin’s fees monthly, keeping the 50% Nevin was required by the contract to pay PPT for the services PPT provided to Nevin. No findings were made that Nevin was paid wages for services performed for PPT and no conclusion was made that “employment” existed. As a result, the necessary predicate for a determination of whether Nevin was an employee or an independent contractor — namely, a determination that “employment” existed in that Nevin performed services for PPT for wages — does not exist here. Consequently, it is my opinion that the Board erred as a matter of law in determining that no legal error had occurred, the District Court erred in affirming that decision and this Court errs in affirming the District Court.
Stated briefly, the mischief in this case is that the hearing officer began in mid-stream and improperly placed the entire burden on PPT. The Department was not required to make the initial showing that employment existed via Nevin’s performance of services for PPT *107 for wages before the burden shifted to PPT to establish that Nevin was, in fact and in law, an independent contractor.
Nor would the record in this case support findings that Nevin performed services for PPT so as to produce a threshold conclusion that employment existed. The contract clearly provides that Nevin was to pay PPT 50% of the fees she collected for patient treatment performed by her in return for use of its facilities and administrative services. Nothing in the contract requires, or suggests in any way, that Nevin was to perform services for PPT. Moreover, the record establishes that PPT and Nevin operated in conformance with their contract, with Nevin paying PPT for the services PPT provided to her. The fact that Nevin deposited the entirety of her fees into PPT’s account and PPT then “paid” 50% of those fees back to Nevin on a monthly basis does not establish that PPT was paying Nevin for services Nevin performed for PPT; regardless of the cumbersome pay-in/pay-back administrative process under which PPT and Nevin operated, the 50% payment flowed from Nevin to PPT, pursuant to the contract, for services PPT provided to Nevin thereunder. Thus, the record contains no evidence which would support a finding that Nevin performed services for PPT for wages.
I fully recognize the state’s significant interest in furthering the public policies which underpin the Unemployment Insurance Law. Those public policies are to lessen the serious menace to the health, morals and welfare of the people of Montana produced by economic insecurity due to unemployment, and to prevent the spread — and lighten the burden — of involuntary unemployment by requiring the assessing of unemployment taxes under the police powers of the state. Sections 39-51-102(1) and 39-51-102(2), MCA. Those purposes are not furthered, however, by allowing the Department to avoid having to make an initial showing that employment exists, especially in a case such as this which involves neither unemployment nor involuntary unemployment. Moreover, as discussed above, the statutes duly enacted by the legislature to advance its stated public policies do not support the Court’s rationale in this case. Indeed, those statutes appear to have been carefully crafted to advance the underlying policies while providing protection to purported employers by requiring that the Department first establish, at the outset, that employment exists.
No evidence exists in the record which would support findings that Nevin performed services for PPT for wages. On that basis, I would conclude that “employment” was not established in this case and that, *108 absent “employment,” it was legal error to reach the question of whether PPT established that Nevin was an independent contractor rather than an employee. Accordingly, I would hold that the District Court erred in affirming the Board’s decision that Nevin was an employee of PPT for unemployment tax purposes and reverse.